24-1979 Tucker v. Commissioner of Social Security Good morning, Your Honors, and may it please the Court. My name is Christopher Bowes. I'm the attorney for the appellant, Melissa Tucker, in this SSI case. You have three minutes reserved for rebuttal, Mr. Bowes. Thank you, Your Honor. Thank you. Ms. Tucker applied for SSI benefits in 2014, and this case has been up and down the courts. The administrative law judge who decided the case agreed that if she accepted the opinion from the treating psychiatrist, Dr. Awa, those opinions would direct the finding of disability. She rejected Dr. Awa's opinion, and we believe for wrong reasons that are unsustainable, particularly she repeatedly stated that Dr. Awa's opinions were not supported by his treatment notes. She repeatedly said in her decision that Dr. Awa's treatment notes showed largely intact mental status examination, and while in her decision the administrative law judge acknowledges a blunted effect and anxiety, she ignores several key aspects of a mental status examination that she's not at liberty to just ignore. She ignores psychomotor retardation in the presentment to Dr. Awa, impoverished speech, and poor eye contact. So when a psychiatrist is evaluating a claimant, they're taking into account all of the different presentations, what the individual tells the psychiatrist, but also these elements of the mental status examination. I'm sorry, when you say the ALJ ignored them, the ALJ wrote at great length and reviewed the doctor's opinions and statements at great length. Your problem is that she didn't mention impoverished speech or the eye contact issue? And psychomotor. And psychomotor. She repeatedly says that the mental status examination is largely intact. So when she does that, she says, I acknowledge that there's a blunted effect and an anxious mood. But you can't say that the presentation is largely intact and then ignore the rest of the actual mental status examination. And that's one of the things that we challenge. Well, help us out. What is it about the findings that cast doubt on the conclusion that it's basically intact? What are you thinking that we would have to conclude the IJ overlooked? These regulations, the treating physician regulations, but also the new regulations require the adjudicator to look to what the doctor is considering when formulating their opinion. And Dr. Ottawa tells us what he considered when formulating his opinion. Right, but the IJ's conclusion, which you're challenging, is that there's not enough objective evidence to reach a conclusion that she's unable to work at all. And so I'm trying to understand what there is in the record that would make us conclude that the IJ didn't give weight to, as should have been done. It was the repeated, I mean, Dr. Ottawa says that she's only had a marginal response to treatment. So he's trying all different sorts of medications to help her along. But what does that tell us about her ability to work? Because a marginal response to treatment could mean all kinds of things depending on how severe the problem was and what limits that put on her. I apologize, Your Honor. The case was sent back to this judge by the court. Yes. And the appeals counsel said, by the way, you previously said that Dr. Ottawa's opinion was probative and supportive, and you accepted it. But when we look at it, we think that this opinion shows that she can't do even simple work. So there's contradiction in your opinion. And when she goes back and issues the decision in 2022, she basically says, I find it's not supportive. But to get to your point, Your Honor, Dr. Ottawa's opinion, if accepted, shows that she can't perform even the demands of simple work. And what are the findings he makes that support that conclusion? In Dr. Ottawa's opinion? No, no. See, I understand what his ultimate opinion is. You're arguing that they didn't give that opinion appropriate weight, and the reason the agency says it didn't is because it wasn't supported by objective evidence. So tell me what evidence supports the conclusion. That's all I'm trying to get. The repeated mental status examinations on review where Dr. Ottawa finds that she has a wanted effect, that she's struggling. She's struggling to attend school. She has difficulty leaving the house. This is in her race. Okay. So those are the facts. Those are the facts you want. Oh, yes. That's what I mean.  And what's really critical in this case is that the judge repeatedly says, on the one hand, she doesn't believe that Dr. Ottawa's opinion is supportive. And then she says, and other clinical evidence shows normal mental status examination and cites to exhibit 60F and 70F. Well, if you look through 60F and 70F, these are not psychiatric records. You're not going to find mental status examination in those records. So it's very misleading to the reader to say there's other psychiatric evidence that contradicts Dr. Ottawa. Going back to your emphasis on psychomotor retardation, poverty of speech, and blunted affect, is the record evidence showing that those symptoms persisted after 2014? We saw them before, but could you identify any? Yes. I ask because you seem to be leaning heavily on those aspects, and it wasn't clear to me that they persisted. Well, I'm going to have to point to my brief, Your Honor. This is in our brief at... I'm not going to be able to pinpoint all of those. Okay, well, I'll just go back. I had not found the references for after 2014. We have a long record here. Yes. Covering many years, of course. And the other thing that the judge points to is that Ms. Tucker managed to almost complete an associate's degree at a community college by the time that she testified in 2022. And the judge herself says, well, she started in 2012. This is a sporadic effort over many years to try to attain an educational goal. And the judge repeatedly cites this as ability to function. We think it's more evidence of her inability to function. Before her head injury in 2008, the motor vehicle accident, she was in a college preparatory class, school, on a scholarship. And she had to leave there after all of these things happened. The chronic migraine headaches, likely due to a pituitary cyst, according to Dr. Koukoulekou. I'm going to say that wrong. And so there's abundant evidence that she's had tremendous pain. Dr. Arasat acknowledges that she's in tremendous pain and that this is generating her depression and anxiety. Mr. Rose, you do have three minutes for rebuttal, so you can wrap up and return. I just want to point out that the judge said that her condition was controlled with medication. It was not. She just tried different medications, and she had to take a medication called Nuvigil, which is typically given to people with narcolepsy, because she was complaining that she was too sedated all of the time. There's no evidence that she ever achieved good functioning with medication. She struggled throughout the period of time with Dr. Allen. Thank you. Thank you, Mr. Rose. We'll hear from Ms. Elchin. May it please the Court, Natasha Elchin for the Acting Commissioner of Social Security. Substantial evidence supports the ALJ's decision that Ms. Tucker could do a range of light, unskilled work. The ALJ recognized that Ms. Tucker had a number of severe physical and mental impairments, and her decision fairly accounts for those impairments, but it also accounts for the fact that Ms. Tucker was generally managing her impairments with treatment and was well on her way to a associate's degree in graphic design. I will focus on Ms. Tucker's mental impairments today, because that's where Ms. Tucker's counsel was focused, and as for the mental impairments, the ALJ recognized that Ms. Tucker had severe depression and anxiety. The ALJ reasonably found that these impairments did respond to treatment. That's detailed at pages 31 to 32, 37, 40, and 48 of our brief. The ALJ recognized that the mental status examinations overall tended to be benign, and I just wanted to point out that the ALJ did, in fact, recognize that there was psychomotor retardation. That's on page 1688 of the record. The ALJ also recognized poor eye contact and improper speech. That's at page 1694. But it's the ALJ's responsibility to weigh the people with the evidence in the record, and the ALJ reasonably weighed that evidence against other mental status findings, including calm and cooperative demeanor, intact memory and judgment, logical thought process, and normal concentration. In particular, Dr. Alwes' treatment notes repeatedly reflect that Ms. Tucker was attending to tasks normally. I was a little concerned about the ALJ's, what seemed to me, fairly heavy reliance on the fact that Ms. Tucker was able to complete her associate's degree and complete the course work. That was a two-year program that took her over ten years to complete. It was in graphic design. She had on-again, off-again difficulties with it, and I assume that some of that was able to be done remotely. It seemed to me a very modest accomplishment in light of what are documented and what deficiencies in her capabilities as the ALJ recognized. Can you allay my concern that that was given too much weight? I would disagree. It was not given too much weight. It was an appropriate consideration among many, and it was really intended to be consistent with what the ALJ found throughout the record, which was that a number of Ms. Tucker's treating and examining physicians all tended to believe that she could do more than she was doing. Her pursuit of that degree is additional evidence consistent with that conclusion. First of all, as to the point that it took her ten years to complete the degree, I would point to pages 40-41 of our brief where we illustrate that it was not in fact ten years, but she was consistently pursuing that degree. She stopped around 2013, and then she really didn't pursue in earnest until around 2019. Then from 2019 through 2022, she was pursuing the degree a lot more consistently. That's reflected in Exhibit 30E, which is her transcript. At that point, she was attending classes more regularly. But beyond that, and regardless of whether she can persist at college or other courses, the ALJ didn't find that she would be required to persist at that level of difficulty. The ALJ found that she would only need to perform simple and routine tasks with only occasional interaction with coworkers and supervisors and none with the public. The fact that she was pursuing this much more difficult, stressful degree is evidence, among other factors, that she could persist at a lower level. I would also just point out some other developments around 2019, which is when she resumed that degree program. Around that time, she was showing more motivation in general. She stopped using cannabis. She was getting mostly A's and B's in that degree program. She also completed an internship. She was reaching out to friends. And another one of her providers, Ms. Fabricant, described her as a talented artist. So there was evidence. That degree program was not insignificant, and there was other evidence in addition to that that supports the ALJ's finding. Going back to Dr. Alwa, the ALJ gave a number of good reasons for discounting his opinion. Dr. Alwa gave three opinions, and they all said that she had mostly marked mental limitations and couldn't persist even at simple tasks. So the ALJ reasonably discounted those, generally because they were just not well-supported. First of all, in all three of the opinions, Dr. Alwa left blank the space provided for an opinion, provided for an explanation, except to say that her difficulties were mostly medical in nature, which is outside of the area of expertise. And the ALJ also noted that the objective evidence overall did not support the opinion, notwithstanding some of those abnormal findings, because the records overall showed a favorable response to treatment. The ALJ also cited those improvements that I just mentioned, especially around 2019, and reasonably found that the evidence contradicted Dr. Alwa's opinion that she couldn't persist even at simple tasks. So in sum, this is a very extensive record, as Your Honors have recognized. The ALJ fairly considered that 3,500-page record. She gave good reasons for discounting Dr. Alwa's opinion, and also the other opinion from the other source, and reasonably found that Ms. Zucker could do a range of light, unskilled work. And if the Court has no further questions, the Commissioner rests on this brief, and asks that this Court adjourn. Thank you. Mr. Rose, you have three minutes. Thank you, Your Honor. I want to direct the Court's attention to Dr. Alwa's opinion from April of 2014 at page 1036. And he describes disordered mood and blended effects here, and also—oh, I'm sorry, I'm looking at the wrong page—I'm looking at the August opinion at 1088. Describes the mental status and indicates significant changes below. It says, for grooming and psychomotor retardation. So Dr. Alwa was providing the same explanation in his opinion as we find in the record. In January of 2016, there's evidence of psychomotor retardation for eye contact, and that's at page 1463 of the record. So after 2014, okay. Thank you.  And there's no doubt that Ms. Tucker had a lot of pain. She was dealing with chronic headaches and fibromyalgia treated by Dr. Vimello. Dr. Kouyaskou said that her chronic headaches are reasonably related to the pituitary cyst. So when Dr. Alwa says, well, her main problem is her physical problems, that might be true, but it doesn't mean that she doesn't also have the depression and anxiety that he was struggling to treat at the same time. It's just his point is that she's got big problems with her physical presentation, and most of the treating doctors recognize that. Social Security, the judge, or Social Security at any time could have sent Ms. Tucker for a consultative examination. They could have requested a medical advisor. They didn't do that. This all rests on the administrative law judge against the opinion of a trained, licensed psychiatrist. I'm not remembering right now as we're here. Help me out. Is there something in the record that talks about whether the cyst was removable on the pituitary? No. There's an MRI in 2012, I believe, and then a follow-up one in 2022, just around the time of the hearing. What it says in 2022 is that it's stable. It hasn't changed. I didn't see anything that suggests that.  I'm just asking. Thank you. I think that's all I have for Your Honors, and I appreciate your attention to this case. It is a large case for a Social Security case. Thank you very much. Thank you. Thank you to both counsel for their briefs and argument. The matter is submitted. We'll take it under advisory.